PHILADELPHIA & R. R. Co. *v.* NEW ENGLAND TRANSP. Co.

*(District Court, S. D. New York. July 1, 1885.)*

TUG AND TOW—NOTICE OF DANGER—DUTY TO SEEK HARBOR—COAL-BOATS— PUMPS OUT OF ORDER.

Respondent's tug, having several coal-boats in tow, on Long Island sound, when off Norwalk harbor, was notified by the captain of outside boat, No. 99, that his boat could not stand an approaching thunder shower, and to go into Norwalk harbor. The tug kept on, and No. 99 was sunk in the shower that followed. *Held,* that after such notice, and the boat being old, and but 10 inches out of water, reasonable care and prudence in the tug required her to seek refuge from the coming storm, and that she was in fault in not availing herself of the harbor near at hand. But it further appearing that the boat nearly outlived the storm, and that her pumps were choked up and not available, and that she might probably have survived had the pumps been in order, *held,* that she should recover but half her damages.

In Admiralty.

*Benedict, Taft & Benedict,* for libelant.

*Hill, Wing & Shoudy,* for respondent.

BROWN, J. On the twenty-eighth of July, 1882, one of the libelant's boats, No. 99, loaded with coal, was proceeding, in company with other boats, all in tow of the defendant's tug, on a trip from Port Morris to New Haven. The day had been fair, mild, and promising, until about half past two, when there was a change of wind to the southward, and evidences of a coming thunder storm. At about that time, when the tow was opposite, or nearly opposite, the east entrance of Norwalk harbor, the captain of No. 99 asked the pilot of the tug

to go into Norwalk harbor, telling him that he thought a storm was coming, and that his boat could not stand it, and would be lost if the storm should strike them. The tug continued on with the tow. A thunder shower, with a strong wind and heavy sea, fell upon them at about 3:30; and in an hour afterwards No. 99 filled and sank. The evidence shows that No. 99 was an outside boat on the starboard side, exposed to the wind and sea; that she was loaded to within 10 inches of her rail; was 15 years old; that her hatches were not tight; and when she took in water, that her pumps were choked, and could not be worked.

The pilot of the tug does not fully deny these statements of the captain of No. 99; and it appears that when the storm broke upon them they were about four and one-half miles to the eastward of the east passage to Norwalk. This seems to me to confirm the captain's statements, that when he first gave notice to the pilot that a storm was approaching, and that his boat could not bear it, the tug was not far from Norwalk harbor, and that it was a subsequent conversation on the same subject heard by one of the other captains, when it was stated that they were then about as near to Bridgeport harbor as to Norwalk. The defects of the libelant's boat, and her inability to cope with rough weather, were, therefore, not only obvious, but express notice of these facts was brought to the attention of the pilot of the tug with reference to the evident approach of the coming thunder storm. Ordinary prudence and care for the safety of the boats committed to his charge required him to seek any proper place of shelter available. I think the weight of evidence is clearly to the effect that such shelter might easily have been had through the east passage to Norwalk. In disregarding this notice, and not availing himself of the means of safety at hand, the pilot of the tug must be held in fault. *The M. J. Cunningham,* 18 Fed. Rep. 178; *The Niagara,* 20 Fed. Rep. 152.

2. The evidence shows that complaint had previously been made by the defendant of the unseaworthy condition of some of the libelant's boats. No. 99 was at this time 15 years old. Not only were her hatches imperfect, but when water began to be taken in, her pumps were found to be so choked up as to be useless. Notwithstanding this, it was an hour after the storm struck them before she sank. All the other boats of the tow were uninjured, and the storm did not last long after No. 99 sank. The choking of the pumps does not appear from the evidence to have arisen from any excusable accident on the trip. Had the pumps been in serviceable condition, it seems probable that the boat would have been kept afloat. Knowledge of the uselessness of the pumps was not communicated to the pilot of the tug, and could not be presumed by him. Upon this ground No. 99 must also be held chargeable with fault contributing to the loss. *The Oswego,* 8 Ben. 129. The libelant is entitled to recover, therefore, but half his damages, with costs.